UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

* * * * * * * * * * * * * * * * * * *

Microsoft Corporation, a
Washington Corporation,

Plaintiff,

vs. ORDER

Multi-Tech Systems, Inc., a
Minnesota corporation,

Defendant. Civ. No. 00-1412 (ADM/RLE)

* * * * * * * * * * * * * * * * * * *

At Duluth, in the District of Minnesota, this 14th day of December, 2001.

## I. Introduction

On November 15, 2001, the Court heard argument on the Defendant's Motion to Compel Discovery, as well as the Plaintiff's Motions to File an Amended Answer, to Supplement Its Prior Art Statement, to Compel Discovery, and to Take Additional Depositions. At the time of the Hearing, the Plaintiff Microsoft Corporation ("Microsoft") appeared by David T. Pritikin, Douglas I. Lewis, and David R. Crosby, Esqs.; and the Defendant Multi-Tech Systems, Inc. ("Multi-Tech") appeared by Kevin D. Conneely, Esq. For reasons expressed at the Hearing, and briefly reiterated below, we grant, in part, Multi-Tech's Motion to Compel Discovery. We further grant Microsoft's Motion to File an Amended Answer, to Supplement its

69

FILED DEC 14 2001
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

Prior Art Statement, and to Take Additional Depositions. We deny, however, Microsoft's Motion to Compel.

## II. Discussion

We will briefly address each of the Motions as they were presented at the Hearing.

### A. Microsoft's Motion to Supplement its Prior Art Statement.

Microsoft seeks leave to supplement its Prior Art Statement with the Micom Marathon 5K prior art reference ("Marathon 5K"). This reference was previously the subject of a similar Motion by Dialpad.com ("Dialpad"), which is a defendant in a companion case, in August of 2001, in which we allowed Dialpad to add the particular reference to its prior art statement. See, Multi-Tech Systems, Inc. v. Dialpad.com, Inc., Civ. No. 00-1540, Order (D. Minn. August 28, 2001)[Docket No. 48]. As Multi-Tech points out, however, Microsoft's proposed reference adds considerably more information concerning the Marathon 5K than Dialpad had previously sought to add.[1]

In accordance with our Pretrial Scheduling Order, Microsoft served its Prior Art Statement on March 19, 2001. Thus, in order

[1]In particular, Dialpad's proposed reference was only a couple written materials describing the Marathon 5K, while Microsoft seeks to add a reference which comprises nearly 180 pages, including deposition testimony, written descriptions, and other documents.

to supplement its Prior Art Statement, Microsoft was required to make the following showing:

> Plaintiff can add prior art to its original Statement only by leave of court, upon a showing:
>
> a. that it was not and could not reasonably have been located earlier by plaintiff; and
>
> b. that it is not merely cumulative of prior art already listed, and
>
> c. how plaintiff will be prejudiced if leave is denied, and defendant will not be prejudiced if leave is given.

Microsoft Corp. v. Multi-Tech Systems, Inc., Civ. No. 00-1412, Pretrial Scheduling Order (D. Minn. October 19, 2000) [Docket No. 23].

According to Microsoft, in July of 2001, Multi-Tech provided it, for the first time, with "extensive" documentation and articles relating to the Marathon 5K, even though Microsoft had served Multi-Tech, in September of 2000, with a request for "[a]ll documents, information and things comprising, referring, or relating to prior art." Prior to July of 2001, Multi-Tech had only provided a single document making any mention to the Marathon 5K.

After Microsoft reviewed the new documentation, which comprised over 1000 pages relating to the Marathon 5K, it deemed the Marathon 5K potentially significant prior art, as the product had been on sale, and in the public use, for more than one year before Multi-Tech's pertinent patent applications were filed. Thus,

Microsoft sought more information on the product, including the deposition of two individuals who worked for Micom, and who were familiar with the Marathon 5K. Those depositions were taken in mid-August of 2001. Further, during the beginning of September of 2001, Multi-Tech belatedly acknowledged, in discovery, that it still owned two Marathon 5K units, both of which were purchased in April of 1992, prior to Multi-Tech's first application for the patents-in-suit. According to Microsoft, since it did not possess such information prior to the deadline for filing its Prior Art Statement, it could not have included the prior art in its previous reference.

Multi-Tech advances two arguments opposing Microsoft's attempt to supplement its Prior Art statement. First, it contends that, unlike Dialpad, Microsoft did indeed know about the Marathon 5K prior to Multi-Tech's production of the additional information in July and September of 2001, and that Microsoft simply deemed the reference to not be relevant prior art. Second, Multi-Tech contends that it would be prejudiced by the proposed supplemental reference.

Multi-Tech's first argument is that Microsoft initiated a pre-suit investigation, through which it located and examined various references to the Marathon 5K. In particular, Multi-Tech points out that prior to the lawsuit, Microsoft hired a firm to prepare an

opinion regarding the scope and validity of Multi-Tech's patents, at which time the firm located articles regarding the Micom Corporation. Those articles specifically mentioned the Marathon 5K. Thereafter, there may have been further discussions regarding the Micom Corporation, or the Marathon 5K, although the precise nature of any such discussions are not known. Multi-Tech also contends that Microsoft could have uncovered the Marathon 5K reference sooner, as Multi-Tech's patents-in-suit list a patent which was assigned to the Micom Corporation, and essentially described the Marathon 5K.[2]

---

[2]In particular, a Micom employee stated as follows:

> Q. Mr. Guy, does the patent in Guy Exhibit 3 describe a -- at some level of detail, a real Micom product?
>
> * * *
>
> A. Well, yes. We were doing fax demod/remod in the -- in the product, and we were doing it in a way that would work with -- with our voice card and our state mux, our Marathon. So patents are written in a way that make it hard to understand what you're doing. You have to sit down with a magnifying glass and read it. Yeah, I remember this.
>
> Q. Okay. Is the system described in Guy Exhibit 3 what later came out and was called the Marathon 5K?
>
> A. This is a piece of it.

(continued...)

In contrast, Microsoft points out that, while there was an almost one and one-half hour Dialog search regarding the Micom Corporation, on March 31, 2000, there was not a specific search on the Marathon 5K, and the one abstract specifically mentioning the Marathon 5K was dated November of 1993, while the patents-in-suit were filed on January 8, 1993. Thus, as the abstract post-dated the filing of the patents, Microsoft contends that there was no reason it should have known that this was prior art. Consequently, Microsoft contends that it did not, and could not have fully learned of the Marathon 5K prior to Multi-Tech's belated disclosure. We agree.

Although Microsoft may have had some superficial knowledge of the Marathon 5K prior to the deadline for serving its Prior Art Statement, we believe it had no reason to know that the Marathon 5K was relevant prior art, or even prior art, as the abstract Multi-Tech points to post-dated the filing of the patents-in-suit. As for Multi-Tech's remaining arguments, regarding prejudice arising from the proposed supplementation, we note that we previously re-

---

[2](...continued)

Q. A piece of the Marathon 5K?

A. The patent was -- yeah, the practical implication of this was the Marathon 5K.

Deposition of Kenneth Ralph Guy, at 62-63, Exhibit 4 attached to Declaration of Kevin D. Conneely.

jected the same arguments in regard to the Dialpad's Motion, and we conclude that the same contentions should be rejected here. Briefly, Multi-Tech contends that it will be prejudiced by the addition of this reference, although it does not specify how.

Rather, it simply notes that the proposed reference includes a lot more information than Dialpad had referenced. We will not limit Microsoft's prior art reference to that made by Dialpad, however, not only because some of the information advanced by Microsoft was not even known by Dialpad, but also because we can perceive no prejudice in providing Multi-Tech more than the cursory information supplied by Dialpad. Further, it appears that the exclusion of this reference could well prejudice Microsoft if the Marathon 5K, and Multi-Tech's patents, are as close as Microsoft contends, since such a reference would clearly provide insight regarding the validity of Multi-Tech's patents. See, In re GPAC, Inc., 57 F.3d 1573, 1579 (Fed. Cir. 1995).

Finally, we acknowledge Multi-Tech's concern that, even though the discovery deadline in this case has passed, it will need to conduct additional discovery regarding the Marathon 5K. Specifically, Multi-Tech believes that it will need to conduct the depositions of the Microm employees, who were previously deposed by Microsoft, as it did not have the opportunity to conduct the depositions with Microsoft's prior art reference in its possession. We

agree that limited, focused discovery is necessary on this supplemental reference and, therefore, we will allow Multi-Tech to conduct such deposition discovery. We caution the parties, however, that they should not attempt to engage in a whole new wave of discovery, but should limit their questioning to this specific reference. Therefore, we grant Microsoft's Motion to Supplement its Prior Art Statement.

B. Microsoft's Motion to File an Amended Answer.

Microsoft's Motion to file an Amended Answer is largely based on the same factual circumstances as outlined in its Motion to supplement its Prior Art Statement. Microsoft seeks to add an affirmative defense of inequitable conduct based on the intentional concealment, by Multi-Tech, of two pieces of material prior art, including United States Patent No. 5,463,616 ("616 Patent"), and the Marathon 5K. In regard to the Marathon 5K, Microsoft argues that Dr. Raghu Sharma ("Sharma"), Multi-Tech's president and one of the inventors in this case, knew of the Marathon 5K while the patents-in-suit were pending, and that three of the other inventors also knew of Micom, and the Marathon 5K, while the patents-in-suit were pending. Moreover, Microsoft contends that, during the prosecution of the patents-in-suit, Multi-Tech's Marathon 5K-related documentation was available to the inventors, and was stored on the same floor as four of the inventors' offices. Finally, Microsoft

also points out that Multi-Tech purchased two of the Marathon 5Ks in April of 1992, prior to its filing of the patents-in-suit, and that Sharma testified that he would have had to approve the requisition requests on those products. Therefore, based on the above information, Microsoft argues that, in spite of Multi-Tech's clear knowledge of the Marathon 5K, neither the company, the inventors, or the company's attorney, disclosed this material prior art to the United States Patent and Trademark Office ("PTO"), as required.

Further, Microsoft notes that Multi-Tech cited United States Patent No. 5,187,591 ("591 Patent"), which is owned by Micom, and translates into the Marathon 5K, in its patent applications, but distinguished the patent by stating that the 591 Patent's disclosure lacked one of the features Multi-Tech was claiming in its patent application -- namely, compression. Microsoft argues further, that Multi-Tech had the two Marathon 5Ks, and the accompanying documentation in its possession, and that the Marathon 5K did in fact have the compression feature. Thus, Microsoft asserts that Multi-Tech unlawfully attempted to distinguish its patent applications, even though it knew that the purportedly distinguishing feature was available on the applicable patent.

Finally, Microsoft claims that Multi-Tech knew about, and failed to disclose, the 616 Patent -- a patent which disclosed a voice/data system containing each of the elements of the 649

Patent's claims, in connection with the patent prosecution of the 649 patent-in-suit. In particular, Microsoft contends that Sharma, and Multi-Tech's patent attorney, knew about the 616 Patent, and that Multi-Tech did cite the 616 Patent in regard to some of its narrower patent applications pending at the same time at the 649 Patent but, nevertheless, failed to advise the PTO about the 616 Patent in its 649 Patent application. Microsoft further points out that it learned, in October of 2001, that Multi-Tech purchased the 616 Patent in late 1996, allegedly without an acknowledged business purpose, which, Microsoft contends, evidences Multi-Tech's intent to ensure that the owners of the 616 Patent did not bring the patent's existence to the attention of the PTO. Based on the above allegations, Microsoft seeks to assert the affirmative defense of inequitable conduct before the PTO.

Although the deadline to amend the pleading was set by our Pretrial Scheduling Order for April 30, 2001, and Microsoft does not specifically assert that there is "good cause" to amend the Pretrial Order in order to allow the belated amendment, it is clear that there is good cause based on Multi-Tech's late production of information, including the information that Multi-Tech still owns two Marathon 5Ks, which it purchased prior to the prosecution of the patents-in-suit, and that Multi-Tech purchased the 616 Patent in late 1996. Therefore, the only question that remains is whether

the proposed amendment is futile. See, Helleloid v. Independent School Dist. No. 361, 149 F. Supp.2d 863, 877 n. 7 (D. Minn. 2001) ("Although we begin with a presumption of liberality, the right to amend is not absolute * * *, as an amendment to a pleading can be successfully challenged on the grounds of futility if the claims created by the amendment would not withstand a Motion to Dismiss for the failure to state a claim upon which relief can be granted."), citing Becker v. Univ. of Nebraska at Omaha, 191 F.3d 904, 908 (8th Cir. 1999).

A patent applicant commits inequitable conduct when, with the intent to deceive, it conceals information from the PTO that the patent examiner would have found important in deciding whether to allow the claims being prosecuted. See, Li Second Family Ltd. Partnership v. Toshiba Corp., 231 F.3d 1373, 1379 (Fed. Cir. 2000). Thus, to sustain an inequitable conduct defense, Microsoft must show two things: the materiality of the conduct to patentability, and the patentee's specific intent to deceive the PTO. See, Key Pharms. v. Hercon Labs. Corp., 161 F.3d 709, 719 (Fed. Cir. 1998). Courts should be wary of inequitable conduct claims, however, lest they be plead in any patent case. See, Molins PLC v. Textron, Inc., 48 F.3d 1172, 1182 (Fed. Cir. 1995)("Unjustified accusations [of inequitable conduct] may deprive patentees of their earned property rights and impugn fellow processionals."); Burlington

Indus., Inc. v. Dayco Corp., 849 F.2d 1418, 1422 (Fed. Cir. 1988) ("[T]he habit of charging inequitable conduct in almost every major patent case has become an absolute plague."). In the absence of direct proof, the requisite intent can be proved by circumstantial evidence, Molins PLC v. Textron, Inc., supra at 1180-81, although "[i]ntent to deceive can not be inferred solely from the fact that information was not disclosed; there must be a factual basis for a finding of deceptive intent," Herbert v. Lisle, 99 F.3d 1109, 1116 (Fed. Cir. 1996).

While Multi-Tech does cite to deposition testimony of the inventors which shows that they may not have had clear knowledge of the patents, or the prior art at issue, or that the prior art was not cumulative, since the Motion to Amend is reviewed under a Motion to Dismiss standard, we cannot consider such evidence.[3] Rather, taking Microsoft's facts as true, we conclude that the allegations of inequitable conduct should proceed. In relevant part, the Marathon 5K is allegedly prior art, and Microsoft claims that it is highly material "because it embodies all the elements of

---

[3]In considering a Motion to Dismiss under Rule 12(b)(6), Federal Rules of Civil Procedure, we accept as true, in a hypothetical sense, all of the factual allegations of the claim, and we view those allegations in a light most favorable to the nonmoving party. See, Anderson v. Franklin County, Mo., 192 F.3d 1125, 1131 (8th Cir. 1999); Riley v. St. Louis County of Missouri, 153 F.3d 627, 630 (8th Cir. 1998); Springdale Educ. Ass'n v. Springdale School Dist., 133 F.3d 649, 651 (8th Cir. 1998).

Multi-Tech's asserted claims." Moreover, Multi-Tech had the actual Marathon 5K on the same floor of its office as the inventors of the patents-in-suit, as well as the documentation for the Marathon 5K. Further, some of the inventors admitted that they knew about the Marathon product prior to, or during the prosecution of, the patents-in-suit. Microsoft also underscores that, for Multi-Tech to have purchased the Marathon 5K units, Sharma would have had to have signed off on any requisitions. Nonetheless, even though Multi-Tech may have known about the Marathon 5K, Multi-Tech failed to disclose it to the PTO. Accordingly, looking at the facts as espoused by Microsoft, we find there is a sufficient allegation of inequitable conduct concerning the Marathon 5K.

The same is true for the 616 Patent. Although Multi-Tech has found case authority which summarily concludes that the failure to disclose prior art in one application does not rise to inequitable conduct when the prior art was disclosed in another patent application that was pending before the same patent examiner at the very same time, see, FMC Corp. v Hennessy Indus., Inc., 836 F.2d 521, 526 (Fed. Cir. 1987), there is contrary authority, from the same Court, which states that "burying a particularly material reference in a prior art statement containing a multiplicity of other references can be probative of bad faith," Molins PLC v. Textron, Inc., supra at 1184. Thus, we cannot conclude that, as a matter of law,

the circumstances, as plead by Microsoft, cannot lead to a finding of inequitable conduct. Microsoft may well be able to argue that Multi-Tech attempted to hide the reference, first by not citing it in the broader 649 Patent, while citing it for the more narrow patent applications, and then by buying the patent, in an attempt to prevent the patent owners from contacting the PTO. Thus, we conclude that Microsoft can likewise go forward with the inequitable conduct claim regarding the 616 Patent. Therefore, we grant Microsoft's Motion to Amend, in its entirety.

C. Microsoft's Motion To Compel Discovery.

By this Motion, Microsoft seeks to compel Multi-Tech to produce its files regarding its prosecution of pending or abandoned patent applications, as they relate to the patents-in-suit. Microsoft previously requested, on September 22, 2000, "the prosecution histories of all continuations, divisions, continuations-in-part, reissues, reexaminations, foreign applications, or applications that otherwise resulted from, or claimed any benefit of priority based on the Multi-Tech Patents, where issued or pending," as well as "all pending, issued or abandoned patent applications, both United States and foreign." Multi-Tech initially objected to the first request based on privilege, and upon the burdensomeness of the request, although it agreed to provide all non-privileged copies of the prosecution history of the patents-in-suit, as well

as any other responsive, non-privileged documents. Multi-Tech answered the second request, and listed its pending, abandoned, and issued patent applications, including seven pending and abandoned United States applications, and ten pending and abandoned foreign applications. Multi-Tech did not produce the files on those patents, however. Moreover, in a recent communication, Multi-Tech now asserts that the application files are not relevant.

We have previously dealt with the issue of pending and abandoned applications in Cordis Corp v. Scimed Life Sys., 982 F. Supp. 1358 (D. Minn. 1997), and will not fully reiterate the contours of the law here, as we find that the standard we previously detailed still controls our analysis. None of the case law that Multi-Tech cites represents a "sea change" regarding the propriety of ordering the disclosure of pending patent applications. Rather, we conclude that we are still obligated to apply a balancing test, which has been summarized as follows:

> [T]he question of whether disclosure should be ordered requires a balancing of competing policy and litigation interests. Disclosure of file wrappers of pending and abandoned applications should be ordered when the necessity for disclosure outweighs the desirability of maintaining the secrecy of data in the file wrapper, especially if protective measures can be fashioned to minimize the intrusion or to prevent excessive dissemination of the revealed material. Conversely, if the need to examine the file wrapper is less than the interest served in protecting secrecy, or if

> confidentiality could not be effectively protected by other means, disclosure should not be ordered.

Id., at 1361, citing Ideal Toy Corp. v. Tyco Indus., Inc., 478 F. Supp. 1191, 1193 (D. Del. 1978).

"Direct relevancy weighs on disclosure's side, whereas direct competition in the relevant marketplace by the parties weighs on secrecy's side." Central Sprinkler Co. v. Grinnell Corp., 897 F. Supp. 225, 227 (E.D. Pa. 1995).

Multi-Tech argues first that Microsoft has not shown how the applications are relevant to this case, and it also urges that the information may not be protected if disclosed to Microsoft. As we agree with Multi-Tech's first contention, we need not reach the second. As Multi-Tech argues, Microsoft has not made a particular showing of relevance. Rather, Microsoft has simply alleged that the statements made in pending or abandoned applications, which are related to the patents-in-suit, may be important to claim construction, and may also be relevant under the doctrine of equivalents. Microsoft further contends that the parties are not direct competitors. In contrast, Multi-Tech asserts that the parties do directly compete for intellectual property rights in the same technological areas.

We agree with Multi-Tech. First, the parties most certainly compete in some sense, as it appears that their patents overlap on a number of fronts. Moreover, unlike the situation in Cordis,

Microsoft has not cited instances in which Multi-Tech's previous patent applications have contained significant admissions. Id. at 1362. Thus, in that case, although the parties were direct competitors, there was more than a mere bald proclamation of relevance. In contrast here, Microsoft has pointed to nothing other than the potential for relevance. While we understand that it is difficult for Microsoft to specifically identify how the applications are relevant, it has not even attempted to make a showing of something other than the potential that all "related" patent applications may be relevant because they may contain admissions. Nonetheless, they cite no authority for such a proposition, and we have been unable to find any. Moreover, were we to allow such discovery, on such a meager showing, then the balancing test would be unavailing, as pending and abandoned applications for related patents would always be relevant for, as a theoretical proposition, they could always contain admissions. Accordingly, we deny Microsoft's Motion to Compel this discovery.

D. Microsoft's Motion for Leave to Take Additional Depositions.

In this Motion, Microsoft seeks leave to take the depositions of Darrel Dehmer ("Dehmer"), and Daniel Kluth ("Kluth"), even though discovery has closed. The close of fact discovery occurred on August 31, 2001, although the parties had previously

agreed, by a stipulation signed by the Court, to allow depositions to be taken up to October 31, 2001, if they were noticed before August 31, 2001. Even though these two depositions were not noticed prior to August 31, 2001, Microsoft asks to be allowed to note them as the factual bases, which lead it to conclude that these depositions were necessary, were not discovered, through no fault of their own, until after August 31, 2001.

With regard to Dehmer, Microsoft claims that his testimony is necessary to remedy Multi-Tech's inadequate response to Microsoft's Rule 30(b)(6) deposition notice, which asked about Multi-Tech's knowledge, between 1989 and 1998, concerning Micom Communications Corporation and its products. Moreover, Microsoft contends that it did not know of Dehmer until after August 31, 2001.

As for the Micom topic, Multi-Tech produced Hari Arimilli ("Arimilli") for a deposition which took place on September 11, 2001. According to Microsoft, Arimilli's knowledge on the topic was limited, and he was unable to identify most of the Micom-related documents produced by Multi-Tech, and was unable to answer questions about where Multi-Tech obtained the documents. While Arimilli stated that he did not know what Multi-Tech had done with the two Marathon 5K units it owned, he identified Dehmer as someone who had worked with the units. Arimilli did not know what type of work or testing Dehmer had performed on the units, though.

We will allow the late deposition of Dehmer, as Dehmer appears to have additional knowledge regarding the Marathon 5K units that Multi-Tech owned, which goes to its assertion of inequitable conduct, as Microsoft did not have that knowledge until after the close of fact discovery. We note, however, that this deposition should not consume much time, as Microsoft only needs to question Dehmer about the testing he did on the Marathon 5K, and what he said about the Marathon 5K to the other inventors. To that extent, we grant Microsoft' Motion to depose Dehmer.

As for Kluth, he is a patent attorney who prosecuted the patents-in-suit. Microsoft claims that the Rule 30(b)(6) deposition of Multi-Tech's witness, Sharma, took place on October 2, 2001, and was about Multi-Tech's patent licensing policies or licenses in which Multi-Tech has participated. At that time, Sharma first produced a copy of a 1996 assignment of the 616 Patent to Multi-Tech. Sharma could not provide any substantive knowledge regarding that Patent, however, and had not even read the Patent. He further testified that he could not remember any business reason for Multi-Tech's decision to purchase that Patent. Sharma stated that Kluth was the individual who brought the 616 patent to his attention.

As Multi-Tech's reason for purchasing that Patent goes to Microsoft's assertion of inequitable conduct, Microsoft claims it

should be able to depose Kluth, especially since the purchase of the 616 Patent was not made known to Multi-Tech until early October of 2001. In particular, Microsoft seeks the information provided to, and from Kluth, in his negotiations with the prior 616 Patent holders. At the Hearing, Multi-Tech agreed to allow the deposition of Kluth to go forward, due to the limited nature of the questioning that Microsoft has identified. Therefore, we grant Microsoft's Motion to take Kluth's deposition but, as with Dehmer, we caution that we grant no leave to conduct a new wave of discovery in this deposition. Rather, the deposition should focus on the limited areas we have identified. Thus, we grant Microsoft's Motion to Take Additional Depositions in its entirety.

E. Multi-Tech's Motion to Compel Documents.

Multi-Tech seeks to compel Microsoft to produce the following documents: the software source code underlying the operation of the accused products; a screen call memo written by Microsoft founder Bill Gates;[4] marketing, consumer usage reports, and budgetary information for NetMeeting, and the other accused products; documents relating to Microsoft's voice.net code; NetMeeting documents not produced by Microsoft; and documents relating to

[4]Microsoft has agreed to produce the screen call memo written by Bill Gates. As such, we deny that portion of Multi-Tech's Motion, as moot.

Multi-Tech's claims for reasonable royalty damages. We will briefly discuss each of the issues as they were raised at the Hearing.

1. Source Code.

Multi-Tech seeks the source code reflecting the operation of the accused products,[5] as it asserts that the code is the "best, objective indication[] of how the accused products actually operate." Moreover, the source code is a "critical piece of information to Multi-Tech's experts." For its part, Microsoft does not appear to contend that the source code is irrelevant but, rather, it argues that it has already produced a "plethora of documents to show how the accused products operate," and that the source code, which is highly confidential, is not necessary to Multi-Tech. We agree that the source code is relevant, and is therefore discoverable, although subject to the parties' confidentiality agreement. Nonetheless, Multi-Tech is not entitled to the whole universe of source code for the products at issue because, as Microsoft explains, there are many functions within the relevant products which have no bearing on this case. Therefore, we direct the parties to conduct a "meet and confer" to determine which portions of the source code for the products at issue are relevant

---

[5]To the extent that Multi-Tech's request may have reached beyond the accused products, it is only entitled to the source code on the accused products, which are NetMeeting, MSN Messenger, and Game Voice.

to this case. Therefore, to that extent, we grant Multi-Tech's Motion to Compel with regard to the source code.

2. Documents Relating to Microsoft's Voice.net Code.

According to Multi-Tech, MSN Messenger, which is one of the accused products, uses a plug-in to power its voice capabilities. Microsoft has allegedly developed voice.net to replace the plug-in. Multi-Tech has requested, therefore, any documents relating to the voice.net team, or the voice.net source code. It contends that, "[e]ven if Microsoft has not yet publically released or otherwise introduced voice.net, [it] may still be guilty of infringement," which goes to the issue of damages or willfulness.

Microsoft counters by stating that voice.net is not a product, but rather a team of individuals who are designing next generation voice products at Microsoft, and that the documents concerning the voice.net team cannot, therefore, be responsive to Multi-Tech's document request concerning the accused products. Moreover, Microsoft contends that Multi-Tech is seeking information regarding a product that is under development and, consequently, that there is no basis for such discovery.

We agree with Microsoft. The voice.net team, and potential product, may be a continuation of the accused product, but such future expansion is irrelevant at this point. Multi-Tech's asser-

tion that Microsoft "may" be infringing on its Patent is merely supposition, to support a treasure hunt. Multi-Tech should not be allowed, on this scant showing, to rifle though Microsoft's files in the hopes of uncovering potential future lawsuits, which have yet ripened into a claim, given the fact that Microsoft may never launch the product in the marketplace. Thus, as we conclude that the requested information is irrelevant, we deny Multi-Tech's Motion to Compel with regard to the voice.net technology.

3. NetMeeting Documents.

As for the NetMeeting documents, it appears that this issue was generated by litigation, which is proceeding in a District Court in Illinois, and which involves Microsoft. Although Multi-Tech is not involved in that case, the Robins, Kaplan, Miller & Ciresi Law Firm ("Robins Kaplan"), which here represents Multi-Tech, also represents the plaintiff in the Illinois action. Multi-Tech argues that, through that simultaneous representation, attorneys for Robins Kaplan have recognized some documents that were produced in the Illinois case, which, in Multi-Tech's view, should have been produced here. Microsoft has taken issue with that disclosure by Robins Kaplan, and has brought a Motion in the Illinois Court, to enforce the Protective Order entered in that case, and to secure an award of sanctions. In this Motion, though, Multi-Tech asks us to require Microsoft to produce the documents on

a date certain after the District Court in Illinois rules on Microsoft's Motions, but irrespective of how that Court should rule.

There is no dispute that the documents at issue are relevant to this case, and that they should have been produced to Multi-Tech. As such, in our view, the issue before us is not the means by which the documents were discovered, or whether those means require an exercise of the Illinois Court's sanction powers but, rather, whether the documents should here be produced. Necessarily, we leave matters of enforcing a Court Protective Order to the Court which issued the Order, and we find no excuse, arising from the means by which the documents were uncovered, to excuse their lack of production in this action. As is the case before the Illinois Court, we here seek the truth and, if the documents in question are relevant to that search, then they should be produced posthaste. Accordingly, we grant Multi-Tech's Motion to Compel which relates to the NetMeeting documents.

4. Documents relating to Multi-Tech's Claim for Reasonable Royalty Damages.

At the Hearing, the parties advised that they are largely in agreement as to the damages issues raised by Multi-Tech's Motion to Compel. Nonetheless, as we noted at the Hearing,

if, after the agreed upon supplementation, the parties are still at an impasse, they should immediately return to the Court.

The only other issue raised by this portion of Multi-Tech's Motion to Compel pertains to licensing rates that Microsoft has paid for use of other patents in comparable technologies, as well as the nature and scope of other Microsoft licenses, which are relevant as the information goes to a "royalty rate." See, Georgia-Pacific Corp. v. United States Plywood Corp., 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970). Although Microsoft contends that they pay no running royalties on any licenses, there are potentially lump sum royalties which Microsoft has paid, and which may be relevant to this case. Therefore, we direct Microsoft to produce any information on royalties or licenses which include the same or similar features, or functions, as the operating systems which are at issue in this case. We further direct Microsoft to provide such supplementation **by December 17, 2001.**[6] To that extent, therefore, we grant Multi-Tech's Motion to Compel.

5. Marketing, Consumer Usage Reports, and Budgetary Information.

Through a number of requests, Multi-Tech has sought information concerning Microsoft's marketing, consumer usage, and

[6]We designated this date for supplementation of discovery, and for other discovery production, at the time of the Hearing.

budget. However, according to Multi-Tech, Microsoft has not produced all responsive marketing and promotional materials. For example, Multi-Tech is aware of at least two television advertisements, which promote the accused products, and for which Microsoft has not produced information. Moreover, Microsoft has allegedly not produced total NetMeeting budgets. Multi-Tech specifically requests that, "to ensure against piecemeal production, Microsoft should provide to Multi-Tech and to the Court a detailed description of the steps taken to locate and identify all responsive documents in the nature of marketing, consumer usage and budgeting on each of the accused products."

Microsoft contends that it has looked for, and produced, all documents responsive to these requests. As such, we can do nothing more than take the word of Microsoft, and its attorneys, as officers of the Court, at face value. As we have often advised the parties, the remedy in a circumstance where a party has failed fully disclosed information is a spoilation instruction. See, e.g., Lumber v. PPG Industries, Inc., 168 F.R.D. 641, 643 n. 1 (D. Minn. 1996). Therefore, as Microsoft contends that it has fully produced all of the relevant documents, we deny this aspect of Multi-Tech's Motion to Compel.[7]

---

[7]There were some other discovery issues raised by Multi-Tech (continued...)

NOW, THEREFORE, It is --

ORDERED:

1. That the Plaintiff's Motion to File an Amended Answer [Docket No. 52] is GRANTED.

2. That Plaintiff's Motion to Supplement Its Prior Art Statement [Docket No. 52] is GRANTED.

3. That Plaintiff's Motion to Compel Discovery [Docket No. 52] is DENIED.

4. That the Plaintiff's Motion to Take Additional Depositions [Docket No. 52] is GRANTED.

4. That Defendant's Motion to Compel Discovery [Docket No. 49] is GRANTED, in part, as more fully detailed in the text of this Order.

BY THE COURT:

Raymond L. Erickson
UNITED STATES MAGISTRATE JUDGE

---

[7](...continued)
in its Motion to Compel, but the parties advised the Court, at the Hearing, that they have reached an accord as to those issues, or that they need a further "meet and confer" so as to determine which issues involve claim construction, and which do not. To the extent that the remaining issues do not involve claim construction, the parties are instructed to serve their formal responses and objections on the opposing party **by December 17, 2001.**